# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**
March 24, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**BARBARA J. MARSTILLER,**
**Claimant Below, Petitioner**

**vs.)    Nos.    14-1244** (BOR Appeal Nos. 2049540, 2049754 & 2050022)
**15-0303** (Claim No. 2010130264)
**15-0464**

**WEST VIRGINIA UNITED HEALTH SYSTEMS,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Barbara J. Marstiller, by M. Jane Glauser, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. West Virginia United Health Systems, by T. Jonathan Cook, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Orders dated November 5, 2014; March 9, 2015; and April 22, 2015. In the November 5, 2014, Order, the Board of Review affirmed, in part, and reversed, in part, a May 30, 2014, Order of the Workers' Compensation Office of Judges. The Board of Review reversed the Office of Judges' insofar as it added the conditions of right labral tear and chondromalacia of the superior acetabular weight bearing dome. The Board of Review affirmed all the other findings of the Office of Judges. In its Order, the Office of Judges reversed the claims administrator's January 2, 2013, decision which denied the request to add the diagnoses sprain of the lumbar region and pain in joint, pelvic region and thigh to the claim. The Office of Judges reversed the claims administrator's January 14, 2013, decision which denied the request for a diagnosis update to include hip pain. The Office of Judges reversed, in part, and affirmed, in part, the claims administrator's January 14, 2013, decision which denied the request for a diagnosis update to include right hip pain, lumbar radiculitis, and lumbar facet arthritis. The Office of Judges included right hip pain but denied lumbar radiculitis, and lumbar facet arthritis. The Office of Judges reversed, in part, and affirmed, in part, the claims administrator's January 23, 2013, decision denying disorder of hip joint, right hip pain, depression, and sciatica to the claim. The Office of Judges affirmed the claims administrator's decision regarding the denial of disorder of hip joint and sciatica. The Office of Judges also concluded that the depression ruling was premature. The Office of Judges

1

reversed the claims administrator's January 23, 2013, decisions that denied the request to add a right labral tear and chondromalacia of superior acetabular weight bearing dome to the claim and found the conditions compensable. Finally, the Office of Judges affirmed, in part, and reversed, in part, the January 23, 2013, decision of the claims administrator which corrected the January 14, 2013, decision of the claims administrator. The decision of January 23, 2015, found that right hip pain, lumbar radiculitis, and facet arthrosis all were not compensable conditions. The Office of Judges found that right hip pain was compensable. However, it held that the lumbar radiculitis and facet arthrosis were not compensable conditions.

In its March 9, 2015, decision, the Board of Review affirmed an August 13, 2014, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's May 11, 2012, decision denying authorization for Oxycodone and Valium. The Office of Judges affirmed the claims administrator's May 31, 2012, decision denying authorization for transforaminal epidural injections. It affirmed the claims administrator's June 15, 2012, decision denying authorization for right knee treatment. It affirmed the claims administrator's June 15, 2012, decision denying authorization for Oxycodone. It affirmed the claims administrator's June 28, 2012, decision denying reimbursement for a bill from Carolina Health Specialist for $267.30. It affirmed the claims administrator's July 3, 2012, decision denying reimbursement for a bill from Carolina Health Specialist for $267.30 and Grand Strand Regional for $100.00. It affirmed the claims administrator's July 3, 2012, decision denying authorization for Cymbalta. It reversed the claims administrator's September 6, 2012, decision denying authorization for a total hip replacement and remanded with instructions that authorization be granted. It affirmed, in part, and reversed, in part, the claims administrator's November 13, 2012, decision denying authorization for Cymbalta, Klonopin, and Robaxin. The decision was affirmed in regard to the denial of Klonopin and reversed in regard to the denial of Cymbalta and Robaxin. The Office of Judges reversed the claims administrator's January 2, 2013, decision denying authorization for total hip replacement. It affirmed the claims administrator's January 2, 2013, decision denying authorization for counseling for chronic pain. It reversed the claims administrator's January 2, 2013, decision denying authorization for Cymbalta and Neurontin. It affirmed, in part, and reversed, in part, the claims administrator's January 23, 2013, decision denying authorization for Valium, physical therapy for the right hip, physical therapy for the lower back, and an orthopedic evaluation of the right knee. The Office of Judges affirmed the denial of Valium, physical therapy for the lower back, and an orthopedic right knee evaluation but reversed the denial of physical therapy for the right hip. It affirmed, in part, and reversed, in part, the claims administrator's January 29, 2013, decision denying authorization for Cymbalta, Valium, Neurontin, physical therapy and a follow-up visit. The Office of Judges affirmed the denial of Valium but reversed the denial of Cymbalta, Neurontin, physical therapy, and a follow-up visit. It affirmed the claims administrator's February 12, 2013, decision denying authorization for an office visit regarding radiculitis. It affirmed the claims administrator's March 21, 2013, decision denying authorization for an epidural steroid injection. It affirmed, in part, and reversed, in part, the claims administrator's May 17, 2013, decision denying authorization for a lumbar MRI, referral to a pain clinic, physical therapy, and Baclofen. The Office of Judges affirmed the decision denying the lumbar MRI, referral to the pain clinic, and Baclofen. The denial of physical therapy was reversed. It affirmed the claims administrator's October 7, 2013, decision

denying authorization for payment of services rendered on September 16, 2013, for pain in the joint, pelvic region, and thigh. It also affirmed the claims administrator's February 28, 2014, decision denying authorization for Ultram and Hydrocodone.

In its April 22, 2015, decision, the Board of Review affirmed a November 6, 2014, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's January 29, 2014, decision to deny the request for payment of a bill from West Virginia University Medical Corporation for the service date of November 25, 2013. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Marstiller, an employee of West Virginia United Health Systems, injured her hip and back on March 30, 2010, when she hopped down from a tall chair. An MRI of the lumbosacral spine conducted the next day revealed very small disc bulges with no evidence of nerve root impingement or canal stenosis. From April 14, 2010, through July 7, 2010, Ms. Marstiller underwent conservative treatment including physical therapy. Ms. Marstiller was progressing and tolerated the activity with mild complaints of pain and difficulty. However, she began experiencing burning pain in her hips. She received treatment for this complaint from Joseph Voelker, M.D., who diagnosed her with lumbosacral spondylosis and degenerative changes of the low back as well as left leg pain. Dr. Voelker interpreted the March 31, 2010, MRI as showing mild degenerative disc disease with a L4-5 disc bulge without nerve root compression. He recommended that Ms. Marstiller continue conservative treatment with physical therapy.

On May 28, 2010, the claims administrator approved the application for benefits. The accepted diagnosis was low back strain/sprain. An internal provider letter by Matthew Lively, D.O., on July 22, 2010, indicated Ms. Marstiller has low back pain and right lateral hip pain. At that time she occasionally had symptoms that radiated down the posterior part of her leg to her knee. This sensation continued through her many visits to doctors throughout her appeal. An August 18, 2010, MRI of the right hip revealed mild greater trochanteric bursitis and a small focal tear or separation of the chondrolabral junction at the anterior-superior acetabular labrum.

On November 3, 2010, an independent medical evaluation from William Mills, M.D., was completed. Dr. Mills diagnosed chronic and non-radicular low back pain. He found Ms. Marstiller to be at her maximum degree of medical improvement with regard to her back. Dr. Mills opined that he could not state whether Ms. Marstiller had reached her maximum degree of medical improvement in regards to her hip. He recommended that she see a hip specialist. From November 11, 2010, through April 18, 2012, Ms. Marstiller received treatment from Scott Sauer, M.D., an orthopedic surgeon, for lumbar facet arthropathy, bursitis of the bilateral hips, bilateral hip pain, and lumbar radiculitis.

On November 29, 2010, the claims administrator added the diagnosis of hip pain. On December 27, 2010, Ms. Marstiller underwent a contrast MRI of the right hip. It revealed focal defect with abnormal extension of contrast into the medial joint space/cartilage. No definite unstable fragment was identified. The right femoral head was normal in signal and morphology which suggested an acute fracture, avascular necrosis, or a stress fracture.

On February 3, 2011, an independent medical evaluation from Paul Bachwitt, M.D., was completed. He found that Ms. Marstiller was not at her maximum degree of medical improvement for the right hip injury. Dr. Bachwitt opined that an arthroscopic examination of the right hip may or may not benefit her, but it should be allowed because she has had two studies that show abnormalities in the anterior labrum of the hip. Also her treating physician recommended the surgery.

On March 8, 2011, an operative report from Roper Hospital Ambulatory Surgery & Pain Management indicated Ms. Marstiller underwent an arthroscopic right hip labral debridement, an intraarticular arthroscopic right hip iliopsoas release, and an arthroscopic right hip synovectomy and chondroplasty. The post-operative diagnoses were right hip labral tear, chrondromalacia of the superior aspect of the acetabulum, internal snapping hip, and hip synovitis. The superior labrum was found to be degenerated. Then, on June 15, 2011, notes from Dr. Sauer indicated Ms. Marstiller reported a lot of right hip pain. He found that Ms. Marstiller had a new onset of radicular symptoms. On June 23, 2011, an MRI of the lumbar spine revealed mild degenerative facet changes bilaterally at L4-5 and L5-S1, mild disc space narrowing at L5-S1, and degenerative arthropathy in the right hip. No impingement, irritation, or compression of any nerve root was reported.

On July 21, 2011, a report from Dr. McIntosh indicated that Ms. Marstiller fell coming out of her bathroom onto her right knee and felt like she could not put weight on her leg because of the pain. Dr. McIntosh opined her pain was complicated by her back and other issues. On August 4, 2011, Dr. Sauer authored a note which stated that he wanted to clarify that he was requesting an injection for Ms. Marstiller's low back pain and not for her hip pain. He believed Ms. Marstiller had degenerative disc disease at the L4-5 and L5-S1 levels, which was causing sciatic symptoms in her right leg.

A second independent medical evaluation from Dr. Bachwitt was completed on August 29, 2011. Dr. Bachwitt found Ms. Marstiller had weakness of all low back muscles controlled by the sciatic nerve and spinal cord. Dr. Bachwitt felt that she was not at her maximum degree of medical improvement for her low back. Dr. Bachwitt also opined that her hip problems were related to the March 30, 2010, work injury. He also noted Ms. Marstiller had not yet reached her maximum degree of medical improvement in regard to her hip. A diagnosis update was completed by Dr. McIntosh on December 13, 2011. The primary diagnosis was right hip labral tear and the secondary diagnosis was chrondromalacia of superior acetabular weight bearing dome.

On January 5, 2012, Dr. Bachwitt finished an addendum to his original report. Dr. Bachwitt asserted that he reviewed the additional records from Palmetta Orthopedics of

Charleston and does not feel Ms. Marstiller should undergo any type of surgical procedure based upon her lack of control of active motion of her right hip during his previous examination. He stated that she had unusual weakness in all muscles controlled by the sciatic nerve and spinal cord in the low back. He also was not able to perform the low back examination. Dr. Bachwitt noted that he was unable to explain any of her symptoms. He opined that until she received a diagnosis and obtains control of the active motion of her right hip, she should definitely not undergo any type of surgery.

From January 23, 2012, through March 21, 2012, office notes by Dr. Sauer indicated Ms. Marstiller had complaints of right radicular symptoms with pain radiating to the right heel. The plan called for her to undergo a repeat MRI. On April 18, 2012, office notes by Dr. Sauer indicated Ms. Marstiller should undergo an evaluation of the right hip and follow-up at the next appointment for transforaminal epidural injection to treat the low back and right leg pain. On May 8, 2012, based upon Ms. Marstiller's increasing depression and anxiety, Dr. Sauer also requested authorization for a psychiatric evaluation, a referral to the Medical University of South Carolina Orthopedic Department, and an epidural steroid injection. On May 11, 2012, the claims administrator denied authorization for Oxycodone and Valium. On May 31, 2012, it also denied authorization for transforaminal epidural injections.

A controlled substance report issued by Dr. Sauer indicated on June 7, 2012, that Ms. Marstiller needed continued opioid therapy due to her altered gait from pain and appearance of distress. On June 15, 2012, the claims administrator denied authorization for right knee treatment and Oxycodone. On June 28, 2012, the claims administrator denied reimbursement for a bill from Carolina Health Specialist for $267.30. On July 3, 2012, it denied reimbursement for a bill from Carolina Health Specialist for $267.30 and Grand Strand Regional for $100.00. The claims administrator also denied authorization for the medication Cymbalta on July 3, 2012.

Following these denials, Ms. Marstiller received treatment from Brian Hamlin, M.D., who found that she had significant degenerative joint disease of the right hip. He felt she would be a good candidate for a right total hip replacement. A medical statement by Anna Allen, M.D., was completed on September 20, 2012. Dr. Allen requested authorization for a right total hip replacement. On September 21, 2012, Ms. Marstiller underwent hip replacement surgery. The post-operative diagnosis was degenerative joint disease of the right hip. On November 2, 2012, Ms. Marstiller had a follow-up. The plan called for Ms. Marstiller to wean off the Valium so another medication to decrease her depression symptoms, such as Cymbalta, could be prescribed. On September 6, 2012, the claims administrator denied authorization for a total hip replacement. On November 13, 2012, the claims administrator denied authorization for Cymbalta, Klonopin, and Robaxin.

An independent medical report from Chuanfang Jin, M.D., was authored on November 13, 2012. Dr. Jin noted it was difficult to find evidence supporting a true occupational injury. Dr. Jin opined that it is quite likely that her symptoms are related to her degenerative lumbar disc disease that manifested while she was working. Dr. Jin also determined that Ms. Marstiller had reached her maximum degree of medical improvement.

On January 2, 2013, the claims administrator denied the request from Dr. Allen to add sprain of the lumbar region and pain in the joint, pelvic region, and thigh to the claim. The denial was based upon Dr. Jin's November 13, 2012, independent medical evaluation. The claims administrator also denied authorization for total hip replacement, counseling for chronic pain, and authorization for Cymbalta and Neurontin.

On January 14, 2013, the claims administrator denied the request from Dr. Sauer to update the diagnosis to include hip pain based upon Dr. Jin's independent medical evaluation. The claims administrator also denied the request from Dr. Sauer to update the diagnosis to include right hip pain, lumbar radiculitis, and lumbar facet arthritis. This decision was also based upon Dr. Jin's evaluation. An office note from Dr. Allen on January 18, 2012, indicated Ms. Marstiller was still having hip problems. Then, on January 23, 2013, the claims administrator issued two decisions correcting the previous decision dated January 14, 2013, which denied the request from Dr. Sauer to update the diagnosis to include hip pain. The decision recognized that hip pain has already been accepted in the claim. The claims administrator denied the request from Dr. McIntosh to update the diagnosis to include right labral tear and chondromalacia of the superior acetabular weight bearing dome on January 23, 2012. The claims administrator also denied the request from Dr. Allen to update the diagnosis to include disorder of the hip joint, right hip pain, depression, and sciatica. It also denied authorization for Valium, physical therapy for the right hip, physical therapy for the lower back, and an orthopedic evaluation of the right knee. Furthermore, it denied authorization for Cymbalta, Valium, Neurontin, physical therapy, and a follow-up visit. On February 12, 2013, the claims administrator denied authorization for an office visit regarding radiculitis.

On February 26, 2013, a report from Dr. Allen was completed. Dr. Allen found that Ms. Marstiller has a long history of depression which has been worsened by the current medical situation and subsequent financial difficulties. He believed her symptoms of depression were being exacerbated by her pain. Dr. Allen recommended counseling on pain management and coping. The claims administrator denied authorization for an epidural steroid injection on March 21, 2013.

An independent medical evaluation from Bill Hennessey, M.D., was completed on May 10, 2013. Dr. Hennessey opined that there was insufficient evidence that an injury occurred from getting off a chair on one occasion. He recommended no further treatment. Dr. Hennessey found her to be at her maximum degree of medical improvement.

The claims administrator denied authorization for a lumbar MRI, referral to a pain clinic, physical therapy, and Baclofen on May 17, 2013. On October 7, 2013, the claims administrator denied authorization for payment of services rendered on September 16, 2013, for pain in the joint, pelvic region, and thigh. On February 28, 2014, the claims administrator denied authorization for Ultram and Hydrocodone. On January 29, 2014, the claims administrator denied the request for payment of a bill from West Virginia University Medical Corporation for the service date of November 25, 2013. Ms. Marstiller protested all these claims administrator decisions to the Office of Judges and the Board of Review. The Board of Review considered these claims administrator decision in three separate decisions dated November 5, 2014; March

9, 2015; and April 22, 2015. Ms. Marstiller ultimately appealed the adverse holdings of these Board of Review decisions to this Court in Appeal Nos. 14-1244, 15-0303, and 15-0464.

In Appeal No. 14-1244, the Office of Judges found that Ms. Marstiller did not establish by a preponderance of the evidence that the diagnoses dealing with the lumbar spine were causally related to the compensable injury. The Office of Judges noted that the diagnostic evidence of record does not establish an impingement, irritation, or compression which would warrant a finding of radiculitis and sciatica. The Office of Judges based this finding on the March 31, 2010, MRI and the June 23, 2011, MRI. Both revealed no evidence of nerve root impingement, canal stenosis, or compression of any nerve root. The Office of Judges specifically noted that Dr. Voelker believed that the March 31, 2010, MRI revealed mild degenerative disc disease and spondylosis. The Office of Judges also relied on the independent medical evaluation of Dr. Mills who found that Ms. Marstiller's back pain was non-radicular. The Office of Judges found that even Dr. Sauer, Ms. Marstiller's treating physician, noted that she had degenerative disc disease at the L4-5 and L5-S1 level, which was causing sciatic symptoms in her right leg.

The Office of Judges also reversed the claims administrator's denial of Ms. Marstiller's request to add depression as a compensable condition of the claim. The Office of Judges determined that the denial was premature and remanded this issue to the claims administrator for authorization of a psychiatric referral and evaluation. The Office of Judges directed the claims administrator to consider the resulting psychiatric evaluation prior to rendering a decision on Ms. Marstiller's request to add depression to her claim.

The Office of Judges, however, found that the labral tear and chondromalacia of the superior acetabular weight bearing dome were received in the course of and as a result of Ms. Marstiller's employment. The Office of Judges noted that these conditions were revealed on the MRI of the right hip conducted on August 18, 2010. The MRI of the right hip conducted on December 27, 2010, corroborated the finding of a right labral tear. Dr. Bachwitt's February 3, 2011, evaluation also indicated that the hip issues were related to Ms. Marstiller's work injury. The Office of Judges acknowledged that Ms. Marstiller had degenerative issues in her hip but that the degenerative joint disease did not bring about the labral tear and chondromalacia. It found that there was no evidence on record of a left hip labral tear or that the right labral tear pre-existed the claim. The Office of Judges did not believe that either Dr. Jin's evaluation or Dr. Hennessey's evaluation were as persuasive as the reports of Dr. Sauer, her treating physician, or of Dr. Bachwitt.

In its November 5, 2014, decision, the Board of Review determined that the Office of Judges was clearly wrong in finding that a right labral tear and chondromalacia of the superior acetabular weight bearing dome were compensable conditions of the claim. The Board found that there was no medical rationale to establish any connection between the occupational injury of March 30, 2010, and the two hip diagnosis codes based upon the medical record and the findings of Dr. Jin. Therefore, the Board found Ms. Marstiller failed to demonstrate a causal relationship between her current right hip condition and the compensable injury. The Board of Review affirmed the remaining provisions of the Office of Judges' May 30, 2014, Order.

7

The Board of Review's decision in Appeal No. 14-1244 is reversed, in part, and affirmed, in part. Insofar as the Board of Review reversed the Office of Judges' decision to hold the claim compensable for a labral tear and chondromalacia of the superior acetabular weight bearing dome, the Board of Review's decision is based upon a material misstatement and mischaracterization of the evidentiary record. The Office of Judges found that the labral tear and chondromalacia of the superior acetabular weight bearing dome were received in the course of and as a result of her employment. The Office of Judges based this determination on ample evidence. As the Office of Judges pointed out, both Dr. Sauer and Dr. Bachwitt believed that the compensable injury caused Ms. Marstiller's hip issues. The Office of Judges was in a better position to determine the relevance and weight of this evidence, and the Board of Review should not have overturned its Order. The Board of Review, however, was correct insofar as it affirmed the remaining provisions of the Office of Judges' Order. The Office of Judges' Order to remand the claim for a psychiatric evaluation was consistent with this Court's holding in *Hale v. West Virginia Office of the Insurance Commissioner*, 228 W. Va. 781, 724 S.E.2d 752 (2012), and the Board of Review was correct to affirm this aspect of the Order.

In Appeal No. 15-0303, the Office of Judges consolidated nineteen claims administrator decisions primarily involving treatment requests related to Ms. Marstiller's low back, hip, and right knee. The Office of Judges determined that the request for a total right hip replacement was medically related and reasonably required to treat her hip injury. The Office of Judges noted that the claim had been held compensable for pain in right hip, labral tear of the right hip, and chondromalacia of the superior acetabular weight bearing dome of the hip. The Office of Judges noted that Dr. Bachwitt recommended that Ms. Marstiller not receive any additional surgery. However, it found that Dr. Hamlin's assessment, during which he determined that she was a good candidate for a total hip replacement, was more reliable. Dr. Hamlin related the need for a total hip replacement to the compensable labral hip tear and the failed labral repair. The Office of Judges determined that because the right labral tear has been held compensable and could not be surgically repaired via arthroscopy, the requested total hip replacement was medically related and reasonably required. In its March 9, 2015, decision the Board of Review affirmed this aspect of the Office of Judges' Order.

The Office of Judges also determined that all of Ms. Marstiller's requests for physical therapy related to her hip were medically related and reasonably required. The Office of Judges noted that the physical therapy requested by Dr. Allen on September 20, 2012, was one day prior to Ms. Marstiller's right hip arthroplasty and was related to the authorized surgery. The Office of Judges also found that the November 5, 2012, request for physical therapy from Lakeside Physical Therapy was related to her request for a total hip replacement. The Office of Judges found that Ms. Marstiller's request for continued physical therapy was supported by the treatment notes of Dr. Hamlin. Because the Office of Judges authorized Ms. Marstiller's request for a total right hip replacement, it concluded that all requested physical therapy was medically related and reasonably required to treat her compensable injury. In its March 9, 2015, decision, the Board of Review also affirmed the Office of Judges' authorization of Ms. Marstiller's physical therapy requests related to her hip.

8

The Office of Judges, however, determined that the requested treatment for chronic pain was not medically related and reasonably required for Ms. Marstiller's injury. The Office of Judges noted that chronic pain has not been held as a compensable condition. The Office of Judges relied on West Virginia Code of State Rules § 85-20-49.1 (2006), which states that treatment for chronic pain is medically related and reasonably required only "if specifically diagnosed as caused by an injury received in the course of and resulting from employment." In its March 9, 2015, decision, the Board of Review affirmed the Office of Judges' denial of Ms. Marstiller's request for treatment of her chronic pain.

The Office of Judges determined that authorization for the right knee treatment and an orthopedic evaluation of the right knee should be denied because they were not medically related and reasonably required to treat her compensable conditions. The Office of Judges noted the only compensable conditions in the claim are a lumbar sprain, pain in the hip, right labral tear of the hip, and chondromalacia of the superior acetabular weight bearing dome. Because the knee injury was not part of the compensable diagnosis, the Office of Judges determined that treatment for it was not appropriate.

The Office of Judges found that medical authorization was properly denied for epidural injections, physical therapy for the back, an office visit for radiculitis, and a lumbar MRI. The Office of Judges noted that the only compensable diagnosis of the back was a lumbar sprain. The Office of Judges also noted that pursuant to West Virginia Code of State Rules § 85-20-37.5 (2006), the estimated duration of care for a lumbar sprain should not exceed eight weeks. The Office of Judges determined that Ms. Marstiller's continued requests for low back treatment exceeded these guidelines. In its March 9, 2015, decision, the Board of Review affirmed the Office of Judges' denial of Ms. Marstiller's request for additional low back treatment.

The Office of Judges next determined that Oxycodone was not medically related and reasonably required to treat her compensable conditions. The Office of Judges noted that Oxycodone is a Schedule II drug. The Office of Judges found that pursuant to West Virginia Code of State Rules § 85-20-53.14(a) (2006), Schedule II drugs should be prescribed on an outpatient basis for no longer than two weeks after an initial injury or following a subsequent operative procedure. The Office of Judges determined that the injury ocured on March 30, 2010, and found that her 2012 requests for Oxycodone were clearly beyond the limitations of West Virginia Code of State Rules § 85-20-53.14(a). The Office of Judges noted that Ms. Marstiller underwent a right hip arthroplasty on September 21, 2012. However, the Office of Judges found that Ms. Marstiller's requests for Oxycodone were submitted to the claims administrator before the date of the surgery and were not submitted in anticipation of the surgery.

The Office of Judges also determined that Hydrocodone was not medically related and reasonably required to treat Ms. Marstiller's compensable injuries. The Office of Judges noted that it is a Schedule III drug and that pursuant to West Virginia Code of State Rules § 85-20-53.14(b), Schedule III drugs should be prescribed on an outpatient basis for no longer than six weeks after an initial injury or following a subsequent operative procedure. Because the January 13, 2014, request for the medication was made more than six weeks after Ms. Marstiller's

September 21, 2012, surgery, the Office of Judges determined that it was not required to treat her injury.

The Office of Judges held that the request for Klonopin was also not medically related and reasonably required to treat the compensable injury. Based on the report of Dr. Sauer dated January 23, 2012, the Office of Judges found that Klonopin was being requested for Ms. Marstiller's anxiety. The Office of Judges found that Ms. Marstiller's anxiety was not a compensable condition of the claim.

The Office of Judges determined that all the requests for Valium were properly denied by the claims administrator. The Office of Judges found that per West Virginia Code of State Rules § 85-20-53.14(d), Valium should not be approved for longer than six months after an initial injury or following a subsequent operative procedure. The Office of Judges determined that Ms. Marstiller's 2012 request for Valium was submitted beyond the prescribed limits of West Virginia Code of State Rules § 85-20-53.14(d). The Office of Judges also determined that Ms. Marstiller's 2013 requests for Valium were not medically related and reasonably required to treat the compensable injury because Dr. Allen's request indicated that the prescription was intended to treat her for anxiety and depression. Because these conditions were not compensable, the Office of Judges found that the claims administrator's denials were appropriate.

The Office of Judges determined that the claims administrator's denial of the medication Ultram was proper because it is not medically related and reasonably required to treat her compensable injuries. The Office of Judges noted that Ultram is a Schedule IV drug that, pursuant to West Virginia Code of State Rules § 85-20-53.14(d), should not be prescribed on an outpatient basis for longer than six months after an initial injury or following a subsequent operative procedure. Because the medication Ultram was not requested until 2014, the Office of Judges concluded it was proper for the claims administrator to deny it.

The Office of Judges concluded that Baclofen was not medically related and reasonably required for Ms. Marstiller's compensable conditions. The Office of Judges noted that, per Dr. Allen's December 13, 2012, report, Ms. Marstiller had stopped taking Baclofen. From that time up to the Order of May 17, 2013, there is no indication that she started taking Baclofen again. The evidence of record dated after May 17, 2013, fails to disclose the use of Baclofen as well as any request that Baclofen be utilized.

The Office of Judges did however determine that Cymbalta, Neurontin, and Robaxin were medically related and reasonably required to treat her compensable injury. The Office of Judges found that Cymbalta and Neurontin have value for controlling pain. It also determined that Dr. Allen's treatment notes adequately related his request for Cymbalta and Neurontin to Ms. Marstiller's hip and low back pain. It found that Robaxin was a muscle relaxer and that Dr. Allen requested authorization for the medication to help Ms. Marstiller with physical therapy.

The Office of Judges affirmed the claims administrator's denial of the reimbursement request on June 28, 2012, and July 3, 2012. The Office of Judges found that neither reimbursement request should be approved because it was unclear from the evidence in the

record if the treatments requested for reimbursement were medically related and reasonably required to treat Ms. Marstiller's compensable injury. The first request for reimbursement was related to a May 30, 2012, emergency room visit, but the Office of Judges found that there was no indication on the invoice from this visit that the treatment she received was related to one of her compensable conditions. The second reimbursement request was for services rendered by Dr. Allen on September 16, 2013. The claims administrator's decision indicated that the services were for pain in the joint, pelvic, and thigh region. The Office of Judges determined that because Ms. Marstiller suffered from many compensable and non-compensable conditions, the description provided under the reimbursement request was not sufficiently specific to relate the reimbursement request to the compensable injury.

The Office of Judges finally found that Ms. Marstiller had not established that any part of her case was extraordinary or qualified for prolonged treatment under West Virginia Code of State Rules § 85-20-4.1 (2006). The Office of Judges noted that in light of Ms. Marstiller suffering from non-compensable conditions for which treatment has been requested as well as a lack of consistent drug screening, she did not establish that her case was extraordinary. The Board of Review adopted all of the findings of the Office of Judges and affirmed its August 13, 2014, Order on March 9, 2015.

We agree with the conclusions of the Board of Review and the findings of the Office of Judges in Appeal No. 15-0303. Ms. Marstiller has presented sufficient evidence to show that the requested total hip replacement is medically related and reasonably required to treat her compensable injury. Ms. Marstiller sustained compensable injuries to her hip which required surgery. The surgery was regarded by all physicians as unsuccessful. The treatment notes of Dr. Hamlin supported Ms. Marstiller's request for the surgery, and the Office of Judges was within its discretion in relying on his opinion. The Board of Review and the Office of Judges were also justified in authorizing Ms. Marstiller's request for physical therapy relating to her compensable hip injury. The evidence in the record shows that therapy was needed following her right hip arthroscopy and total hip replacement surgeries. It was appropriate for the Board of Review and Office of Judges to grant Ms. Marstiller's request. Because Ms. Marstiller's ongoing hip problems are causally related to the compensable injury, the Board of Review was correct to affirm the Office of Judges' Order authorizing the medications Cymbalta, Neurontin, and Robaxin. The evidence in the record shows that these medications are sufficiently related to Ms. Marstiller's ongoing hip problems and are required to further her recovery.

Furthermore, the Board of Review was within its discretion in affirming the remaining provisions of the Office of Judges' Order, including her requests for chronic pain treatment; right knee treatment; epidural injections; physical therapy for the low back; an office visit related to radiculitis treatment; a lumbar MRI; and the medications Oxycodone, Hydrocodone, Valium, Klonopin, Ultram, and Baclofen. The evidence in the record shows that the numerous treatment requests rejected by the Office of Judges relate to Ms. Marstiller's non-compensable conditions. The evaluations of Dr. Mills, Dr. Jin, and Dr. Hennessey demonstrate that Ms. Marstiller has reached her maximum degree of medical improvement with respect to her low back conditions. The record shows that the requests for Oxycodone, Hydrocodone, Valium, and Ultram were made outside the time limits set forth under West Virginia Code of State Rules § 85-20-53.14.

The record further shows that the request for the medication Klonopin is related to a non-compensable condition. The request for Baclofen was not sufficiently supported by the evidence submitted into the record, and the Office of Judges was within its discretion in rejecting Ms. Marstiller's request.

Ms. Marstiller has also not submitted sufficient credible evidence to show that she is entitled to reimbursement for the emergency room visit on May 30, 2012, and the office visit to Dr. Allen on September 16, 2013. The records from the emergency room visit do not indicate that it was related to a compensable condition of the claim. The treatment notes from Dr. Allen are also not sufficiently clear to indicate that it was related to the compensable injury. Because Ms. Marstiller has numerous compensable and non-compensable conditions, the information she has provided about these two visits is not adequate to justify granting her request for reimbursement.

In Appeal No. 15-0464, the Office of Judges concluded that the services rendered on November 25, 2013, by West Virginia University Medical Corporation were not medically related and reasonably required to treat Ms. Marstiller's compensable injury. The Office of Judges determined that the treatment rendered under that submitted bill related to Ms. Marstiller's labrum tear and chondromalacia of the superior acetabular weight bearing dome. Because the Board of Review rejected Ms. Marstiller's request to add right labral tear and chondromalacia of the superior acetabular weight bearing dome as compensable conditions in its November 5, 2014, decision, the Office of Judges found that the treatment was not related to the compensable injury. The Board of Review adopted the findings of the Office of Judges and affirmed its Order.

The April 22, 2015, decision of the Board of Review is based on a material misstatement and mischaracterization of the evidentiary record. Because this Court has held Ms. Marstiller's claim compensable for a labral tear and chondromalacia of superior acetabular weight bearing dome in connection with Appeal No. 14-1244, the services rendered by West Virginia University Medical Corporation, which were related to these conditions, were medically related and reasonably required. Ms. Marstiller is entitled to reimbursement for these services.

For the foregoing reasons, we find that the November 5, 2014, decision of the Board of Review, insofar as it reversed the Office of Judges' decision to hold the claim compensable for a labral tear and chondromalacia of superior acetabular weight bearing dome, was based upon a material misstatement and mischaracterization of the evidentiary record. The Office of Judges' determination that these conditions were received in the course of and as a result of her employment should not have been overturned. As a result, the Board of Review's decision in that regard is reversed and remanded with instructions to reinstate the Office of Judges' May 30, 2014, Order. However, insofar as the Board of Review affirmed the remaining provisions of the Office of Judges' May 30, 2014, Order, the decision was not based on a clear violation of any constitutional or statutory provision, nor is it clearly the result of an erroneous conclusion of law, nor is it based on a material misstatement or mischaracterization of the evidentiary record. Therefore, the remaining aspects of the Board of Review's November 5, 2014, decision is affirmed. We find that the March 9, 2015, decision of the Board of Review is not a clear

violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the March 9, 2015, decision of the Board of Review is affirmed. We find that the April 22, 2015, decision of the Board of Review was based on a material misstatement and mischaracterization of the evidentiary record. Therefore, the Board of Review's April 22, 2015, decision is reversed and remanded with instructions to grant Ms. Marstiller's request of reimbursement for the November 25, 2013, treatment from West Virginia University Medical Corporation.

Appeal No. 14-1244 is Reversed, in part, Affirmed, in part, and Remanded.
Appeal No. 15-0303 is Affirmed.
Appeal No. 15-0464 is Reversed and Remanded.

**ISSUED: March 24, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

13